**LAW OFFICES OF**
**BENJAMIN G. KELSEN, ESQ, LLC**
**179 CEDAR LANE**
**TEANECK, NJ 07666**
**PHONE: 201-692-0073 / FAX: 201-692-0151**
**EMAIL: *bgkelsen@kelsenlaw.com***
**ATTORNEYS FOR PLAINTIFF(S)**

| | |
|---|---|
| **MEIR BRYSKMAN and ZALMAN BRYSKMAN and JEAN BRYSKMAN, HIS PARENTS, AND INDIVIDUALLY** <br><br> Plaintiff(s), <br><br> vs. <br><br><br> **DAVID WAX and JUDY WAX, and JOHN DOES 1-100,** <br><br> Defendant(s), | **UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY** <br><br> **CIVIL ACTION - LAW** <br><br> **JURY TRIAL DEMANDED** <br><br> **No.:** _____-CV-_____ <br> **Judge** _____ |

JURISDICTION AND VENUE

1.   This action arises out of violations of  18 U.S.C. § 1201, 42 U.S.C.  § 1981, 42 U.S.C. § 1983,  42 U.S.C. section § 1985, 42 U.S.C. § 1986, 28 U.S.C. § 2201, the State of New Jersey Criminal Code and the common law.

2.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367 and other applicable statutes.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendants **DAVID WAX** and **JUDY WAX** as well as some of the JOHN DOE defendants reside in this State and some of the defendants reside in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

COMPLAINT

      Plaintiffs **MEIR BRYSKMAN and ZALMAN BRYSKMAN and JEAN BRYSKMAN, HIS PARENTS, AND INDIVIDUALLY** allege as follows:

1.   **DEFENDANTS DAVID WAX** and **JUDY WAX** are husband and wife and reside in Lakewood, New Jersey.

2.   **MEIR BRYSKMAN**, the victim of this offense (hereinafter referred to as Y.M.B. or "the victim"), is a citizen of the State of Israel and presently resides in the United States.

3.   **ZALMAN BRYSKMAN and JEAN BRYSKMAN**, (hereinafter referred to as M.Z.B. and

J.B. or "the victim's parents") are the parents of the above referenced **MEIR BRYSKMAN**, M.Z.B. is a citizen of the Brazil. J.B. is a citizen of the United States. Both presently reside in the State of Israel.

4.    **JOHN DOES 1-100** are currently unknown individuals who were co-conspirators and/or assailants and/or otherwise involved with the other defendants in the carrying out of the incident which is the basis of this complaint.

5.    On or about October 16, 2010 until approximately October 17, 2010, in Lakewood, Ocean County, in the District of New Jersey and elsewhere, defendants **DAVID WAX,   JUDY WAX,** and/or **JOHN DOES 1-100** did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold for ransom and reward and otherwise, or did conspire to do so, a person, namely, Y.M.B., and did willfully transport or conspire to transport Y.M.B. in interstate commerce, namely from New York to New Jersey, and from New Jersey to New York. In violation of Title 18, United States Code, Section 1201 and Title 18, United States Code, Section 2.

**6.**    On or about October 17, 2010, in Ocean County, in the District of New Jersey and elsewhere, defendants **DAVID WAX,   JUDY WAX,** and/or **JOHN DOES 1-100** did conspire to and/or did in actuality knowingly transmit in interstate and foreign commerce from the State of New Jersey to the State of Israel, a telephonic communication to M.Z.B., said communication containing a threat to kidnap, injure, and kill Y.M.B. unless M.Z.B. paid $100,000.00 in United States currency to the family of C.D.S., the former spouse of M.Z.B., in violation of Title 18, United States Code, Section 875(c) and Title 18, United States Code, Section 2.

7.    The Federal Bureau of Investigation ("FBI") and the Lakewood Police Department investigated the kidnaping of Y.M.B. and related offenses since October 2010. In furtherance of that investigation, the officers reviewed an audio recording of a conversation that occurred on October 17, 2010 between David Wax and M.Z.B., interviewed people with knowledge

of the events that occurred at that time, conducted a search warrant at the home of David and Judy Wax, reviewed medical records of the victim, reviewed travel records of individuals involved in the kidnaping and related offenses, and have reviewed telephone records relating to the events described.

8.    The victim and C.D.S. were engaged in a contested divorce and custody issues in a Rabbinical Court in the State of Israel. During the course of those proceedings, upon the advice of his rabbis, after his wife refused to let him see his children or to be involved in their lives in any way, and contrary to the will of the children the victim moved from the State of Israel to the United States.

9.    It should be noted that several senior Israeli rabbis and rabbinical judges issued a written protest against C.D.S. for refusing to let Y.M.B. see his children. Additionally, upon information and belief, former Israeli Supreme Court Justice and ombudsman Tovah Strasburg-Cohen, who deals with complaints against rabbinic judges, investigated this matter and  released a scathing report against the corrupt practices of the Israeli Rabbinical Court on the case of Y.M.B.

10.   On Saturday night, October 16, 2010, after the Sabbath, the victim traveled from New York to Lakewood by bus. While in route, the victim received a call from David Wax asking the victim to accept a ride from David Wax's associate, JOHN DOE 1. The victim insisted that he did not need a ride.

11.   The victim was told by Wax that the purpose of the meeting was to be further discussion between Wax and the victim regarding work the victim was doing with Wax on Wax's books. When the victim arrived at the Wax home, located at 1136 Somerset Avenue in Lakewood, New Jersey, at approximately midnight on the night of October 16-October 17, 2010, both the defendants **DAVID WAX** and **JUDY WAX** were present.

12.   Shortly after arriving at the Wax home, the victim was led to a second floor bedroom by **DAVID WAX**  where the victim thought that they were going to start the planned meeting

as this was where they had met in the past.

13.     After the victim walked through the door of the bedroom, two unidentified males, Defendants **JOHN DOES 1-2** grabbed the victim from behind, jumped on him, and punched him in the face breaking his nose. The victim was positioned face down on the floor and his personal belongings, including his shoes and the contents of his pockets were taken from him. The victim was handcuffed, blindfolded and his legs and arms were bound. The handcuffs were fastened so tightly that the victim lost the feeling in his hands.  The victim complained to his captors about the pain in his arms and hands and his nose which was bleeding profusely. For a short time the Defendants stopped kicking and punching the victim and walked out of the room. They returned back a few minutes later with a wire of some sort and instead of loosening the handcuffs, they constrained the victim hands even further by wrapping wire all along his right and left arms, from the wrist to the elbow. The victim remained tied in this position for hours while the torture continued. David Wax was present and an active participant throughout the assault laughing at the cries of the victim for his attackers to stop.

14.     The attackers spoke of the victim divorcing his wife and told the victim that he will give the divorce without receiving custody or any visitation rights or parenting time vis a vis his children.

15.     At one point, the victim stated that Wax picked up the victim's head allowing the victim to see Wax from under the blindfold at which time Wax was wearing a white cowboy hat and asked the victim "do you like my hat" then started kicking the victim in the ribs. Wax also constantly threatened to urinate on Y.M.B. on several occasions.

16.     The victim was shown a body bag and told by the defendant David Wax that if he did not comply that he would be buried alive in the Pocono Mountains. The defendants also told the victim that they told him they planned to videotape how he died while he was eaten alive by rats. The defendants  told the victim that they had been contracted to kill him and that the

video would serve as proof of the killing for their employer. A dark colored body bag was brought into the room and laid on the victim by Wax who stated "for you to get used to the size" and that the body bag "fit [him] perfectly".

17.     The assault lasted for multiple hours and the victim was threatened repeatedly. During the first half hour of the assault the victim was forced to verbally consent to a "*Get*" a Jewish religious divorce.

18.     The attackers went through the divorce process.  Following the victim's consent to the forced religious divorce the attack did not stop but rather continued for hours, while the victim lay face down and restrained on the floor in a pool of  blood. Once the divorce was concluded the defendants began questioning the victim about his life: where he stayed, who his friends were, how much money he had and where he kept the same. If the victim did not answer fast enough, the defendants kicked him repeatedly and threatened his life. At one point, the defendant David Wax noticed the puddle of the victim's blood that spread beneath him. He began to kick the victim again screaming "you ruined my carpet".

19.     While he was being beaten and interrogated, one of the attackers stated to the victim that "this" was revenge because C.D.S., the victim's former wife, was angry that the divorce was delayed even though the victim had repeatedly said that he would gladly acquiesce if the issues of  custody and visitation rights to the couples' children which had and continues to be denied to him were settled.

20.     At one point, one of the defendants, at present the victim does not know which, carried in a bottle of a clear liquid, brought it to the victim's mouth and told him to drink. The victim refused and clinched his teeth. The defendant tried shoving the bottle into his mouth but was not successful. ucceed. In frustration, the defendant bent down to the victim's ear and asked whether he, the defendant, needed to break the victim's teeth to make him drink the liquid. As the victim still refused to open his mouth, the defendant poured the contents of the bottle over the victim's face and head, causing the victim to feel a terrible burning all over his

Page 5 of  12

head, face and in his eyes.  Drops of the liquid got into the victim's mouth and the victim found that it was not drinking water. The victim was sure that the defendants had poured acid over him and that he was going to lose his face and his eye sight, even if he somehow survived the beatings. Additionally, as he was laying with his face on the carpet the unknown liquid gathered under the victim's face on the carpet, burning him on the side of his face. In order to ease his pain the victim tried keeping his face from coming into contact with the liquid, but every time he moved, the defendants started kicking and beating the victim because "He moved without their permission".

21.     The victim heard David Wax's voice and the voice of at least two other males during the beating and attack.

22.     The victim was asked to raise his voice and consent to the divorce over and over again. The victim was told what to say word for word in English and in Hebrew.

23.     The victim was told that he would be taken out of the house and that the attackers wanted M.Z.B., the victim's father, to pay C.D.S.'s family and if M.Z.B. cooperated, the victim would be freed. If not, M.Z.B. would "get a bullet" and Y.M.B. would be killed. The victim was then taken down the stairs of the Wax home and outside via the side door of the house where the handcuffs were removed and the attackers, excluding Wax, left in a van.

24.     Wax called for a taxi. When the taxi arrived, Wax instructed the victim to pay for the taxi by withdrawing $800 from the ATM at Sovereign Bank in Lakewood. The taxi drove David Wax and the victim to the Sovereign Bank in Lakewood. However, the victim was unable to retrieve money from the ATM machine.

25.     Records received by law enforcement from Latino Express Taxi in Lakewood, New Jersey confirmed the pick-up at the Wax home at approximately 3:00 a.m. on October 17, 2010.

26.     Wax paid the taxi driver and the taxi started toward New York. The taxi driver told Wax that a car was following them to which Wax replied that he was aware. During the kidnaping, David Wax told the victim that he had an "Italian team" in a follow-car that would take the

victim to the Poconos and bury him alive.

27.     Defendants **DAVID WAX,  JUDY WAX,** and/or  **JOHN DOES 1-100**  forced the victim to place a call to his parents, the Plaintiffs **ZALMAN BRYSKMAN and JEAN BRYSKMAN** in Israel. During this call, Wax told M.Z.B. that the victim "already gave a divorce". Wax also told M.Z.B. that "they know where you are at every second . . . at "*Heimish* [the name of a food establishment in the State of Israel] two days ago at quarter to six" referring to a location where M.Z.B. had been two days earlier. This caused M.Z.B. great fear as it indicated that defendants **DAVID WAX,  JUDY WAX,** and/or  **JOHN DOES 1-100** were maintaining surveillance on the victim's family in Israel.

28.     M.Z.B. was further told "They know everything. For you there's a special gift. It's called a bullet ... in your head. I'm helping [Y.M.B., the victim] and I'm saving him, because between us they didn't want to give a divorce. They wanted to give him to mice in the mountains to eat him. But that's all over. [inaudible] got what she deserves. There's a rich guy here who works with the Yeshiva, the Jewish Press, and he was there. Now like this listen ... listen well. If they don't hear that you sent $100,000 to [C.D.S., the victim's former wife's] family you have two hours ... I'm telling you ... two hours on the clock."

29.     During much of the call, M.Z.B. asked David Wax what he could do because M.Z.B. didn't have that kind of money to come up with. As the call continued, Wax stated "[The victim's dad] a dad can't give a divorce ... only money."

30.     David Wax continued "do you want a funeral or a divorce?" The call concluded with Wax stating "Listen, listen, listen good. You have ... you a phone. I will call you in an hour ... in an hour. Life ... it's your son's life [inaudible] thousand dollars in dollars to their family for the sorrow. I will talk to these people in order to end this matter here and there. Period. Bye."

31.     A review of call detail records from calling card calls placed from David Wax's cellular telephone confirmed an approximately 18 minute call from David Wax's cellular telephone

to M.Z.B. at 4:11a.m. on October 17, 2010. In the presence of Y.M.B., David Wax called someone in Israel, addressing this individual as "Eyal". Defendant David Wax referred to the defendant "Eyal" as being responsible to observe the home of MZB, and to make sure that money would be transferred to the defendant C.D.S.'s father.

32.    The victim further stated to law enforcement that at some point during the travel, the victim was transferred from the taxi to the Wax's vehicle which was driven by Judy Wax. The victim sat in the back seat and David Wax sat in the front passenger seat. The victim was told that he was going to be driven to New York and dropped off. The victim was still in fear for his life and asked to be released right there. David Wax and Judy Wax did not comply.

33.    During this drive, David Wax told the victim not to go to the police or that "they" would kill him or the victim's father and that the victim should not return to Lakewood. Wax also told the victim that he should not tell anyone the divorce was forced and that if the money was not paid within 24 hours both the victim and his family in Israel would be killed.

34.    The victim gave the Defendant David Wax the victim's cousin's address in Brooklyn. The victim was driven to his cousin's house by Judy Wax. David Wax and Judy Wax waited outside in the car for the victim to go into the house.

35.    The victim was released on October 17, 2010. Though urged by his family to seek medical attention, the victim was afraid of being killed by the defendants. Due to the seriousness of the injuries and the amount of pain he was experiencing, the victim acquiesced and consented to getting medical help and to report the incident to the police.

36.    On Sunday night, October 17, 2010 the victim went to Maimonides Hospital in Brooklyn, NY, where he was kept overnight for observation. While in the hospital, the medical personnel alerted the police and several officers came to the hospital to speak with the victim. When told what happened, the officers advised the victim to file a report with the Lakewood, NJ Police Department due to issues of jurisdiction.

37.   Following the filing of the report with the Lakewood Police, the Defendants David Wax and Judy Wax were arrested.

38.   MZB reported the kidnapping and extortion threats to the Israeli police, who, after a short investigation, advised him and his wife not to come out of his apartment for three days following the attack, because the Israeli police could not guarantee their safety.

39.   On October 19, 2010, search warrants were authorized for the Wax home and a 2004 Chevrolet Van registered to the Defendants. These search warrants were authorized by the Honorable Stephanie Wauters, J.S.C., Ocean County.

40.   Among the items of note were the following: a white cowboy hat on the floor of the master bathroom; the bedroom carpet had no signs of blood but there was a presence of green carpet fibers and it did not appear to be from the current carpet; an invoice from Step on Me Carpet & Flooring which indicated that an installation was done at the Wax home in the master bedroom, in the name of David Wax, on October 17, 2010 for $1,311.10, paid part in cash and part in a check with Judy Wax's name on it.

41.   On October 20, 2010, law enforcement contacted an employee of Step on Me Flooring and Carpet. This employee stated the following. He received a call on October 17, 2010 to do an installation at the Wax home in Lakewood. The call came from someone who identified himself as David Wax. This employee informed the caller that they do not do installations on Sundays. The caller stated that he really needed it done and would pay extra. This employee arranged for the installation to be done by Jim's Carpeting. The new carpet was installed in the same room where the beating took place.

42.   A review of travel records for C.D.S., the victim's former wife, reveals that she arrived at Newark Liberty International Airport from Tel Aviv, Israel on El Al Airline on October 15, 2010 and departed John F. Kennedy International Airport on October 18, 2010 for Tel Aviv, Israel.

43.    A review of David Wax's cellular telephone records details approximately five calls between October 17, 2010 and October 19, 2010 to or from his cellular telephone and a telephone number known to the victim to be a telephone number associated with C.D.S. and her family in Israel.

## COUNT ONE
### (Assault)

44.    Plaintiffs repeat and reallege each and every allegation contained above as if fully repeated herein.

45.    Defendants intended to put Y.M.B. in reasonable and immediate apprehension of a harmful or offensive contact with his body.

46.    As a result of defendants' actions, Y.M.B. was put in reasonable and immediate apprehension of such contact.

## COUNT TWO
### (Battery)

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully repeated herein.

48.    Defendants committed the acts described above with the intent to cause a harmful or offensive contact with Y.M.B.'s body and/or with the intent to put Y.M.B. in reasonable and immediate apprehension of a harmful or offensive contact with his body.

49.    Defendants' actions directly and indirectly resulted in a harmful and/or offensive contact with Y.M.B.'s body with permanent injury.

## COUNT THREE
### (Intentional Infliction of Emotional Distress)

50.    Plaintiffs repeats and realleges each and every allegation contained above as if fully repeated herein.

51.     Defendants, by their extreme and outrageous conduct, intentionally or recklessly caused the Plaintiffs to suffer severe emotional distress and bodily harm.

## COUNT FOUR

### (Conspiracy)

52.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully repeated herein.

53.     Defendants **DAVID WAX,  JUDY WAX,** and/or  **JOHN DOES 1-100**  did conspire to injure, oppress, threaten, or intimidate the Plaintiffs in violation of Federal Law including but not limited to Title 18, U.S.C., § 241 and New Jersey State Law. Defendants also conspired to prevent and/or hinder the Plaintiffs' free exercise or enjoyment of their rights so secured.

**WHEREFORE**, plaintiffs demands judgment as follows:

1.      For Count One, an amount to be determined at trial, including punitive damages, plus interest;

2.      For Count Two, an amount to be determined at trial, including punitive damages, plus interest;

3.      For Count Three, an amount to be determined at trial, including punitive damages, plus interest;

4.      For Count Four, an amount to be determined at trial, including punitive damages, plus interest;

5.      For plaintiffs' attorneys' fees, pursuant to 42 U.S.C. § 1988;

6.      For the costs and disbursements incurred in this action; and

7.      For such other and further relief as the Court deems just and proper.


                                        LAW OFFICES OF BENJAMIN G. KELSEN, ESQ. LLC.
                                        ATTORNEY FOR THE PLAINTIFF


                                        _____

                                        BENJAMIN G. KELSEN, ESQ.
DATE: September 30, 2012

                                JURY DEMAND
                Plaintiffs demands a trial by jury on all issues.